2023-1556

IN THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

TEAM SYSTEMS INTERNATIONAL, LLC,

Appellant,

v.

SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,

Appellee.

Appeal from the Civilian Board of Contract Appeals in CBCA No. 7145,
Administrative Judges Beardsley, Drummond, and Sheridan

**BRIEF OF APPELLEE, SECRETARY OF THE DEPARTMENT OF
HOMELAND SECURITY**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

MARTIN F. HOCKEY, JR.
Deputy Director

STEVEN MICHAEL MAGER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 616-2377

August 28, 2023                    Attorneys for Appellee

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF RELATED CASES ................................................. vii

STATEMENT OF THE ISSUE ..............................................................1

STATEMENT OF THE CASE ...............................................................1

    I.      The Federal Emergency Management Agency Enters Into A
           Contract With TSI Containing A "Restocking Fee" Provision
           For The Costs Of Restocking A Decreased Or Cancelled Order .........2

    II.    Three Years After FEMA's Reduction In The Requirement,
           TSI Seeks The Payment Of A Restocking Fee For The Full
           Reduction In Quantity, Without Restocking .......................................5

SUMMARY OF ARGUMENT ..............................................................10

ARGUMENT .......................................................................................11

    I.      Standard of Review ..........................................................................11

    II.    The Board Correctly Rejected TSI's Contract Interpretation Based
           Upon The Plain And Unambiguous Language Of The Contract........13

           A.     Principles Of Contract Interpretation .......................................13

           B.     The Plain Language Of The Contract Is Unambiguous,
                   And Requires Restocking To Receive A Restocking Fee .......15

    III.   The Court Should Not Consider The Proffered Extrinsic Evidence
           To Introduce Ambiguity Into The Otherwise Plain Language
           Of The Agreement ............................................................................21

A.   The Board Did Not Abuse Its Discretion In
     Declining To Reopen And Reconsider Its January 27, 2022
     Decision And Excluding TSI's Late Proffered Declarations
     From The Record ...................................................................... 23

B.   The Hurricane Florence Task Order Does Not Support
     TSI's Claims ............................................................................. 28

IV.  The Doctrine Of *Contra Proferentem* Is Not Applicable Here .......... 31

V.   TSI Fails To Demonstrate That The Board's Determination
     That It Suffered No Damages Is Unsupported By Substantial
     Evidence. ............................................................................... 33

CONCLUSION ......................................................................... 35

# TABLE OF AUTHORITIES

## CASES                                                       PAGE(S)

*Agility Logistics Servs. Co. KSC v. Mattis*,
  887 F.3d 1143 (Fed. Cir. 2018) ...................................................12

*Alaska Lumber & Pulp Co. v. Madigan*,
  2 F.3d 389 (Fed. Cir. 1993) ........................................................22

*C. Sanchez & Son, Inc. v. United States*,
  6 F.3d 1539 (Fed. Cir. 1993) ......................................................14

*Chase & Rice, Inc. v. United States*,
  354 F.2d 318 (Ct. Cl. 1965)........................................................30

*CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*,
  140 S. Ct. 1081 (2020)........................................................ 13, 15

*Coast Fed. Bank, FSB v. United States*,
  323 F.3d 1035 (Fed. Cir. 2003) ....................................... 13, 14, 28

*Curtin v. Office of Pers. Mgmt.*,
  846 F.2d 1373 (Fed. Cir. 1988) ............................................ 12, 23

*Edward R. Marden Corp. v. United States*,
  803 F.2d 701 (Fed. Cir. 1986) ........................................ 13, 32, 33

*Elec. Boat Corp. v. Sec'y of the Navy*,
  958 F.3d 1372 (Fed. Cir. 2020) ...................................................12

*Fraunhofer-Gesellschaft zur Forderung der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*,
  940 F.3d 1372 (Fed. Cir. 2019) ...................................................14

*Fruin-Colnon Corp. v. United States*,
  912 F.2d 1426 (Fed. Cir. 1990) ...................................................33

*Gardiner, Kamya & Assocs., P.C. v. Jackson*,
  467 F.3d 1348 (Fed. Cir. 2006) ...................................................31

*Gates v. Raytheon Co.*,
    584 F.3d 1062 (Fed. Cir. 2009) ....................................................12

*Hercules Inc. v. United States*,
    292 F.3d 1378 (Fed. Cir. 2002) ....................................................15

*HPI/GSA 3C, LLC v. Perry*,
    364 F.3d 1327 (Fed. Cir. 2004) ....................................................32

*Hunt Construction Group, Inc. v. United States*,
    281 F.3d 1369 (Fed. Cir. 2002) ....................................................15

*Johnson Mgmt. Grp. CFC, Inc. v. Martinez*,
    308 F.3d 1245 (Fed. Cir. 2002) ............................................. 12, 23

*Jowett, Inc. v. United States*,
    234 F.3d 1365 (Fed. Cir. 2000) ............................................. 26, 27

*Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*,
    973 F.3d 1366 (Fed. Cir. 2020) ............................................. 11, 12

*King v. Dep't of Navy*,
    130 F.3d 1031 (Fed. Cir. 1997) ....................................................13

*M&G Polymers USA, LLC v. Tackett*,
    574 U.S. 427 (2015)....................................................................13

*McAbee Constr., Inc. v. United States*,
    97 F.3d 1431 (Fed. Cir. 1996) ......................................... 15, 22, 28

*Metric Constructors, Inc. v. NASA*,
    169 F.3d 747 (Fed. Cir. 1999) .....................................................26

*Northwest Title Agency, Inc. v. United States*,
    855 F.3d 1344 (Fed. Cir. 2017) ....................................................27

*NVT Techs., Inc. v. United States*,
    370 F.3d 1153 (Fed. Cir. 2004) ....................................................18

*Premier Office Complex of Parma, LLC v. United States*,
    916 F.3d 1006 (Fed. Cir. 2019) .............................................................. 14, 15

*R.B. Wright Constr. Co. v. United States*,
    919 F.2d 1569 (Fed. Cir. 1990) ......................................................................27

*Reliable Contracting Group, LLC v. Department of Veterans Affairs*,
    779 F.3d 1329 (Fed. Cir. 2015) ......................................................................31

*Sharp Elecs. Corp. v. McHugh*,
    707 F.3d 1367 (Fed. Cir. 2013) ......................................................................12

*Sterling Sav. v. United States*,
    57 Fed. Cl. 445 (2003) ....................................................................................27

*TEG-Paradigm Envtl., Inc. v. United States*,
    465 F.3d 1329 (Fed. Cir. 2006) ............................................................... 14, 21

*Triax Pac., Inc. v. West*,
    130 F.3d 1469 (Fed. Cir. 1997) ......................................................................32

*Trident Ctr. v. Connecticut Gen. Life Ins. Co.*,
    847 F.2d 564 (9th Cir. 1988) ..........................................................................22

*Two Shields v. United States*,
    119 Fed. Cl. 762 (2015), *aff'd sub nom. Ramona Two Shields v. United
    States*, 820 F.3d 1324 (Fed. Cir. 2016) ..........................................................28

*WDC West Carthage Associates v. United States*,
    324 F.3d 1359 (Fed. Cir. 2003) ............................................................... 30, 31

*Yuba Nat. Res., Inc. v. United States*,
    904 F.2d 1577 (Fed. Cir. 1990) ......................................................................23

*Zoeller v. McHugh*,
    626 F. App'x 983 (Fed. Cir. 2015) ..................................................................23

## **STATUTES**

41 U.S.C. § 7107(b) ........................................................................... 11, 12

41 U.S.C. § 7107(b)(2)(C) ...................................................................1

41 U.S.C. §§ 7101-7109 ....................................................................11

## **REGULATIONS**

48 C.F.R. § 52.212-4 ............................................................................3

48 C.F.R. § 52.212-4(d) .....................................................................34

48 C.F.R. § 52.233-1 ..........................................................................34

## **STATEMENT OF RELATED CASES**

No other appeal in or from the same proceeding before the Civilian Board of Contract Appeals (CBCA or board) was previously before this or any other appellate court.  The Government is not aware of any other case that may be directly affected by this Court's decision in this appeal.

2023-1556

IN THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

TEAM SYSTEMS INTERNATIONAL, LLC,

Appellant,

v.

SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,

Appellee.

Appeal from the Civilian Board of Contract Appeals in CBCA No. 7145,
Administrative Judges Beardsley, Drummond, and Sheridan

**BRIEF OF APPELLEE, SECRETARY OF THE DEPARTMENT OF
HOMELAND SECURITY**

## STATEMENT OF THE ISSUE

Whether the board erred in determining that the plain language of the

contract (the restocking fee provision) required appellant Team Systems

International, LLC (TSI) to restock before they would be entitled to the payment of

the restocking fee.

## STATEMENT OF THE CASE

As a general matter, we agree with and adopt the findings of fact by the

CBCA. *See* APPX0001-0005; APPX0009-0010; APPX0014-0015. The board's

findings are supported by substantial evidence. 41 U.S.C. § 7107(b)(2)(C). To the

extent that TSI urges this Court to make its own findings inconsistent with the

CBCA's findings or adopt new findings, this Court should reject TSI's suggestion. Indeed, TSI's statement of the case is replete with its own findings of fact which often diverge from the board's findings, without any demonstration that the board's findings are not supported by substantial evidence (or otherwise subject to review by this Court).

However, for the sake of clarity, we restate the relevant portions of the board's findings here, submit a factual counterpoint to TSI's new findings where it may be necessary, and provide the underlying procedural posture before the board, as may be relevant to the current appeal.

## I. The Federal Emergency Management Agency Enters Into A Contract With TSI Containing A "Restocking Fee" Provision For The Costs Of Restocking A Decreased Or Cancelled Order

On September 5, 2017, the Federal Emergency Management Agency (FEMA) awarded indefinite delivery/indefinite quantity (IDIQ) contract no. HSFE70-17-D-0021 for the provision of bottled drinking water during declared disasters to TSI (among other offerors).  APPX0031; *see also* APPX0002; APPX0014; APPX0362.  The IDIQ contract included contract line item number (CLIN) 005, which allowed for the payment of a "Restocking Fee," upon the occurrence of certain conditions.  APPX0073; *see also* APPX0002; APPX0014; APPX0362-0363.

Specifically, the IDIQ contract provided:

> **Restocking Fee: (CLIN X005)** – The initial ordered quantity either decreases or the order is cancelled.  The fee covers the costs of restocking decreased or cancelled order to the Contract.

*Id.*  Despite TSI's arguments to the contrary in its statement of the case, Appellant's Br. at 6-7, the plain language of this clause does not provide for the payment of a fee merely upon the cancellation or reduction of an order, and no contemporaneous evidence was presented to the board that either party expressed the view that the restocking fee provision was a cancellation/reduction in quantity penalty provision, wholly untethered from restocking.  APPX0073.  Consistent with the Federal Acquisition Regulations (FAR), the contract does allow for the recovery of costs upon the partial termination for convenience of a contract, *see* APPX0031 (incorporating by reference FAR 52.212-4), but TSI has not filed any claims under this termination provision, even for a constructive partial termination, nor has it argued that this provision is applicable here.  *See* Appellant's Br. at 7 (referencing the termination clause).

On September 23, 2017, FEMA solicited quotes from multiple contractors, including TSI, for the delivery of bottled water to multiple ports in Puerto Rico and ability to transport to U.S. Virgin Islands (if needed) as part of the disaster response to Hurricane Maria.  *See* APPX0155-0157; *see also* APPX0002; APPX0432-0434.  Although FEMA initially estimated of that a total 240 million liters of water would be needed across all IDIQ holders, it also noted that the

amount of water needed might fluctuate from the time of the RFQ release and award, and sought the award of multiple contracts to meet the Government's requirements.  APPX0155.  Again, no fixed cancellation fee provision was included in this request for quotation, but FEMA did request a quote for the restocking fee, consistent with the IDIQ agreement.  APPX0157; *see* APPX0002; APPX0363.

On September 29, 2017, FEMA awarded TSI task order no. HSFE70-17J-0273 for the procurement and delivery of 80,000,640 liters of bottled drinking water.  APPX0171; *see also* APPX0002; APPX0364.  The task order included a restocking fee of $0.20 as CLIN 0005, stating "IDIQ restocking terms and conditions applies.  As requested by vendor, Government to provide 24 hour notice for cancellation."  APPX0173; *see also* APPX0003; APPX0364.

On October 9, 2017, FEMA notified TSI of a reduction to the requirement, to 3 million bottles of water per week.  APPX0115; *see also* APPX0003.  In response, TSI provided on October 12, 2017 that it had "two weeks water in transit through JAX [Jacksonville] to PR [Puerto Rico]," and had purchased the other 6 million but was "holding back to stage the shipments."  APPX0114; *see also* APPX0003.  On November 4, 2017, TSI provided that 4 containers (with 20 pallets of 18,240 liters per pallet) has not yet been shipped, but that 695 containers had been shipped.  APPX0113; *see also* APPX0003.  The decrease in the water

quantity was formalized into bi-lateral modification P00001 on November 6, 2017. APPX0184-0186; *see aslo* APPX0003.  This modification reduced the water quantity from 80,000,640 liters of bottled drinking water to 12,479,040 liters, for a net reduction in quantity of 67,521,600 liters.  APPX0184; *see also* APPX0003.

TSI did not physically restock any bottles of water as a result of the decrease and did not pay any restocking fees to its subcontractors.  APPX503; *see also* APPX0014.

## II.     Three Years After FEMA's Reduction In The Requirement, TSI Seeks The Payment Of A Restocking Fee For The Full Reduction In Quantity, Without Restocking

On October 20, 2020, three years after the events in question, TSI submitted invoice number TSI-0273-005 seeking the payment of $13,504,192 under CLIN 0005.  APPX0089-0090; APPX0271; *see also* APPX0003; APPX0365.  FEMA denied payment under the invoice.  APPX0087; APPX0270; *see also* APPX0003; APPX0365.

On November 3, 2020, TSI submitted a certified claim under the Contract Disputes Act, wherein TSI requested payment in the amount of $13,504,320 for restocking fees under CLIN 0005 due to the reduction in the ordered quantities from modification P0001.  APPX0269; *see also* APPX0003; APPX0365-0366. TSI claimed that it was entitled to $0.20 per liter for the entire reduction in quantity of 67,521,600 liters under CLIN 0005, "as requested by the vendor."  *Id*.

5

The claim provided that "TSI had on order the required 80,000,640 liters of water[,]" but did not include any evidence that TSI had been required to restock more than 67 million liters of bottled water or make any claim that TSI incurred any costs of restocking. *Id.* Accordingly, the contracting officer denied TSI's claim on April 30, 2021, but (based on FEMA's contemporaneous records) determined that TSI was entitled to receive $14,592 under CLIN 0005 (for 4 containers x 18,240 liters x $0.20 restocking unit fee). APPX0273-0286; *see also* APPX0003-0004; APPX0366.

TSI appealed this denial to the CBCA in June 2021. *See* APPX0004; APPX0020.

Following discussions between the parties that identified the interpretation of the CLIN 0005 restocking fee as the only substantive issue of dispute between the parties, TSI filed a motion to suspend discovery deadlines. *See* APPX0021; APPX0389. The board granted TSI's motion to suspend and the parties fully briefed the contract interpretation issue in initial cross-motions for summary judgment. *See* APPX0021-0022.

In their respective initial cross-motions, both parties agreed that the plain and unambiguous language of the contract supported their respective interpretations. *See* APPX0002; APPX0003-0004 (summarizing the parties' arguments). For its part, TSI contended that "[t]he plain and unambiguous

language of CLIN 0005 provides that the fee is triggered by either a decrease in the ordered quantity or cancelation of the order."  APPX0413; *see also* APPX0419-0426.  More simply, TSI contended that the restocking fee was "effectively" a cancellation penalty fee, rather than a restocking fee.  APPX0421.  In its initial motion, TSI did not assert or present any evidence that the phrase "restocking fee" needed to be interpreted in accordance with trade practice, nor did TSI submit evidence that it had relied upon trade practice in interpreting this contract provision.  APPX0011.  *See generally* APPX0419-0429.

On January 27, 2022, the CBCA denied TSI's motion and, based upon the plain language of the contract, held that "in order for TSI to recover restocking fees under this contract, it must prove more than that the order was simply decreased or cancelled."  APPX0002.  Instead, the board held that to recover restocking fees, "[t]here must be proof that the supplies were actually restocked and a fee was charged for that restocking."  APPX0006.  However, because the board also determined that it was "unclear from the record if any supplies were actually restocked, thereby incurring a restocking fee," the board also declined to grant FEMA's motion for summary judgment.  APPX0007.

TSI did not seek reconsideration of the board's decision within 30 days of the board's decision.  *See* APPX0020-0024; *see* CBCA Rule 26 (reconsideration).

Instead, after the parties jointly elected to submit the remaining issues to the board without a hearing pursuant to Rule 19 of the Rules of Procedure of the Civilian Board of Contract Appeals, TSI submitted a supplement to the appeal file that included three expert reports, opining on how the contract at issue should be interpreted. *See* APPX0010. Other than opining on the question of contract interpretation, none of these three reports addressed the specific facts that the board has left to be resolved. *Id.* FEMA objected to these reports, observing that the board had already addressed the interpretation of the contract, and the declarations were not relevant to the remaining issues. *Id.*

The board restyled FEMA's motion as a motion in limine to exclude these three expert reports, APPX0010-0011, and granted FEMA's motion. As an initial matter, the board noted that eight months prior to the motion, the board had found the contract terms related to restocking to be "unambiguous." APPX0011. TSI had not sought reconsideration, but rather "by its submission of" the three expert reports, sought to have the board effectively "reopen and reconsider" its decision. *Id*. The board held that "[a]t the time that the [b]oard made its [prior] decision, TSI had every opportunity to submit these reports but did not. The three proposed exhibits essentially go to how the [b]oard should interpret the contract, which we already did in our January 2022 decision." In addition, the board noted that the extrinsic evidence contained in the proposed exhibits would not have altered the

8

board's determination that the contract was unambiguous.  APPX0011-0012.

Accordingly, the board held that the new evidence that TSI had submitted was

"neither timely nor acceptable."  APPX0011.

On February 9, 2023, the board rendered its Rule 19 decision on the record.

APPX0013-0017.  Although in its motion TSI had sought to introduce extrinsic

evidence (including a prior contractual arrangement between FEMA and TSI) that

would support its theory that the requirement to pay the restocking fee was merely

triggered by a decrease in the requirement (without the need to allege or prove

restocking or the existence of restocking costs), the board again noted that it had

previously held that the contract was unambiguous, and thus there was no need to

examine such evidence.  However, even if the contract were to be held to be

ambiguous, the board noted that the evidence submitted by TSI would have little

weight, because TSI did not provide sufficient information to determine "whether

the circumstances of the tasks orders were similar."  APPX0016.  Further, the

board noted that the fact that its supplier did not charge TSI anything for the

cancellation of its order here cut against any argument that it was industry custom

to treat a restocking fee provision as a cancellation penalty.  *Id.*

This appeal followed.

# SUMMARY OF ARGUMENT

This case focuses upon a narrow dispute regarding three lines (the restocking fee provision) of a contract between FEMA and TSI to supply bottled water in national emergencies.  *See* APPX0073.  Although TSI neither restocked the bottled water at issue, nor paid any restocking fees to its suppliers, APPX0014, APPX0435, TSI contends that the board erred in interpreting the plain language of the contract's restocking fee provision to only provide for compensation upon restocking and incurring any costs of restocking, rather than require for a payment to the contractor merely upon the cancellation of an order or a reduction in quantity.  At its core, TSI seeks to have the Government pay a restocking fee where there was no restocking.  Despite TSI's conclusory statements to the contrary, and attempts to introduce ambiguity into the contract through the otherwise untimely introduction of extrinsic evidence, TSI's arguments are unsupported by the plain language of the contract, which provides in pertinent part:

> **Restocking Fee: (CLIN X005)** – The initial ordered quantity either decreases or the order is cancelled.  The fee covers the costs of restocking decreased or cancelled order to the Contract.

APPX0073.

FEMA agrees that had TSI been required to restock as a result of a reduction in quantities or cancellation of an order, TSI would have been entitled to the restocking fee.  FEMA also agrees that an order must be decreased or cancelled in

order to trigger the restocking fee provision; since restocking in the ordinary course would not require the payment of the restocking fee.  Contrary to TSI's repeated allegations, FEMA does not (and has not) contended that TSI must demonstrate (or may receive) its actual costs in order to receive the restocking fee under this provision.  However, FEMA does not agree (and the board correctly held) that a mere reduction in quantities or cancellation of an order is sufficient, standing alone, to entitle a contractor to compensation without restocking.  The plain language of the agreement provides that the restocking fee "covers the costs of restocking decreased or cancelled order," so that where no restocking occurs, no restocking fee may be recovered.  There is no ambiguity here, and the board did not err in its interpretation of the contract.  Accordingly, this Court should affirm the board's decision.

## ARGUMENT

### I.   Standard of Review

The Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109, specifies the standard of review for this appeal.  41 U.S.C. § 7107(b); *see Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*, 973 F.3d 1366, 1370 (Fed. Cir. 2020) (citing 41 U.S.C. § 7107(b)).  Under that standard, the Court reviews the board's decision as to questions of law without deference.  41 U.S.C. § 7107(b) ("decision of the agency board on a question of law is not final or conclusive");

*Sharp Elecs. Corp. v. McHugh*, 707 F.3d 1367, 1371 (Fed. Cir. 2013).  Questions of contract interpretation are generally considered question of law, which are reviewed *de novo*.  *Agility Logistics Servs. Co. KSC v. Mattis*, 887 F.3d 1143, 1148 (Fed. Cir. 2018).  Though not binding, this Court "give[s] the Board's legal conclusions careful consideration in view of the Board's considerable experience in construing government contracts."  *Elec. Boat Corp. v. Sec'y of the Navy*, 958 F.3d 1372, 1375 (Fed. Cir. 2020) (citing *Gates v. Raytheon Co.*, 584 F.3d 1062, 1067 (Fed. Cir. 2009)).

In contrast, the board's decision "on a question of fact is final and conclusive and may not be set aside unless the decision is—(A) fraudulent, arbitrary, or capricious; (B) so grossly erroneous as to necessarily imply bad faith; or (C) not supported by substantial evidence."  41 U.S.C. § 7107(b); s*ee Kellogg Brown*, 973 F.3d at 1370 (quoting 41 U.S.C. § 7107(b)).

Finally, it is well established that "[p]rocedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials."  *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988).  Accordingly, "a discovery or evidentiary ruling of the [b]oard will not be overturned unless 'an abuse of discretion is clear and is harmful.'"  *Johnson Mgmt. Grp. CFC, Inc. v. Martinez*, 308 F.3d 1245, 1252 (Fed. Cir. 2002) (quoting *Curtin*, 846 F.2d at 1378).

## II.  The Board Correctly Rejected TSI's Contract Interpretation Based Upon The Plain And Unambiguous Language Of The Contract

### A.  Principles Of Contract Interpretation

In interpreting a contract, the Court endeavors to ascertain the joint intent of the parties at the time the contract was formed.  *See King v. Dep't of Navy*, 130 F.3d 1031, 1033 (Fed. Cir. 1997) ("The paramount focus is the intention of the parties at the time of contracting; that intention controls in any subsequent dispute."); *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed. Cir. 1986) ("cardinal rule of contract construction that the joint intent of the parties is dominant if it can be ascertained").

To do this, the Court "begins with the language of the written agreement," which "must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts."  *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003).  "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent."  *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015).  "In such circumstances, the parties' intent can be determined from the face of the agreement and the language that they used to memorialize [that] agreement."  *CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*, 140 S. Ct. 1081, 1088 (2020) (internal quotation marks omitted).  Simply, "[w]hen the contractual language is unambiguous on its face, [the] inquiry ends and the plain language of

13

the Agreement controls." *Coast Fed. Bank, FSB*, 323 F.3d at 1040-41. "If a contract provision is clear and unambiguous, the court *may not resort to extrinsic evidence to interpret it*." *Premier Office Complex of Parma, LLC v. United States*, 916 F.3d 1006, 1011 (Fed. Cir. 2019) (emphasis added).

"A contract term is unambiguous if there is only one reasonable interpretation." *Id.* (quoting *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1544 (Fed. Cir. 1993)). In contrast, "[w]hen a provision in a contract is susceptible to more than one reasonable interpretation, it is ambiguous." *TEG-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006). "To show an ambiguity it is not enough that the parties differ in their respective interpretations of a contract term, rather, both interpretations must be reasonable." *Premier Office Complex of Parma, LLC*, 916 F.3d at 1011 (internal quotation marks omitted).

"If ambiguity is found, or if ambiguity has arisen during performance of the agreement, the judicial role [remains] to implement the intent of the parties at the time the agreement was made." *King*, 130 F.3d at 1033. To do that, courts "utilize extrinsic evidence to derive a construction that effectuates the parties' intent at the time they executed the contract." *TEG-Paradigm Envtl., Inc.*, 465 F.3d at 1338; *see also Fraunhofer-Gesellschaft zur Forderung der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, 940 F.3d 1372, 1381 (Fed. Cir. 2019).

14

Whereas interpretation of an unambiguous contract is a question of law, as is the determination of whether a contract is ambiguous, *see Premier Office Complex of Parma, LLC*, 916 F.3d at 1011, interpretation of a facially ambiguous contract becomes a question of fact. *CITGO Asphalt Ref. Co.*, 140 S. Ct. at 1088. As the Supreme Court has explained, "[w]hen a written contract is ambiguous, its meaning is a question of fact, requiring a determination of the intent of [the] parties in entering the contract; that may involve examining relevant extrinsic evidence of the parties' intent and the meaning of the words that they used." *Id.* (internal quotation marks omitted).

### B.     The Plain Language Of The Contract Is Unambiguous, And Requires Restocking To Receive A Restocking Fee

It is well settled that "[c]ontract interpretation begins with the plain language of the written agreement." *Hercules Inc. v. United States*, 292 F.3d 1378, 1380–81 (Fed. Cir. 2002) (citing *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). If the plain language of the contract is unambiguous on its face, then the inquiry ends, and no extrinsic evidence is considered. *Hunt Construction Group, Inc. v. United States*, 281 F.3d 1369, 1373 (Fed. Cir. 2002). Because the plain language of the restocking fee provision supports the board's (and FEMA's) interpretation, this Court should affirm the CBCA's decision.

The language that needs to be interpreted here is rather limited,[1] and consists only of the title of the CLIN and the two sentences further defining the CLIN:

> **Restocking Fee: (CLIN X005)** – The initial ordered quantity either decreases or the order is cancelled.  The fee covers the costs of restocking decreased or cancelled order to the Contract.

APPX0073.  As an initial matter, the title of CLIN 0005 is "Restocking Fee."  *Id*.  The sole reasonable interpretation of this language is that CLIN 0005 is intended to serve as a fee that applies to restocking.  It is not a cancellation/reduction fee.  It is, just as the title expressly and unambiguously provides, a restocking fee.  Next, the first sentence of the definition of the CLIN requires that "[t]he initial ordered quantity either decreases or the order is cancelled."  *Id.*  This means that a contractor is only eligible to receive the restocking fee when the initial ordered quantity either decreases or the order is cancelled.  Restocking for any other reason (such as in the ordinary course of business or in connection with the performance of the contract) would not result in the payment of the restocking fee.  Finally, the second sentence of the definition provides that "[t]he fee covers the costs of restocking decreased or cancelled order to the Contractor."  *Id*.  This means that the restocking fee is intended to cover the costs of any restocking that was caused

---

[1] Although TSI claims that the task order at issue altered FEMA's obligations with regards to the restocking fee, the task order expressly stated that "IDIQ restocking terms and conditions applies."  APPX0173; *see also* APPX0003; APPX0364.  Accordingly, the relevant contract language remains the IDIQ language quoted above.

by a decreased or cancelled order.  In other words, the restocking fee unit price of

$0.20 applies for any restocking that occurs, in lieu of the contractor seeking

reimbursement of the actual costs for restocking.

Put together, CLIN 0005 is a restocking fee that covers the cost of

restocking bottles of water that a contractor must restock as a result of an initial

ordered quantity decreasing or being cancelled. To that end, the quantity to which

the restocking fee is applied would be the number of liters that a contractor must

restock as a result of the ordered quantity decreasing.

This interpretation is in accordance with the plain language and gives

reasonable meaning to all portions of that language.  No language is rendered

meaningless, and no additional language must be added.   The contract language

here is unambiguous on its face, and the restocking fee should apply to restocking.

This straightforward interpretation of the contract language stands in stark

contrast to TSI's interpretation of the same provision.  TSI contends that the plain

language of the contract's restocking fee provision does not require any allegation

or evidence of restocking, it is simply provided upon a cancellation or a reduction

in quantity, measured by the cancellation or reduction in quantity.  *See, e.g.,*

Appellant's Br. at 21-22 ("Since it is undisputed that FEMA reduced the initial

ordered quantity, TSI is entitled to the "restocking fee" under CLIN 0005 for the

quantity reduced").  Despite the description of CLIN 0005 as a "restocking fee,"

and the statement that the fee "covers the *costs of restocking* decreased or cancelled order to the Contract," TSI seeks to transform a restocking fee into a fee for cancellation or reduction in quantity, without any ties to restocking. This interpretation is absurd, and fails to give effect to all of the language of the provision. *See NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (explaining that interpretations should "harmonize and give reasonable meaning" to all parts of the contract, rather than "leave[ ] a portion of the contract useless, inexplicable, void, or superfluous"). The board was correct to reject TSI's interpretation.

More specifically, TSI's interpretation would render the title of the CLIN, "Restocking Fee" without any meaning. Pursuant to TSI's interpretation, restocking is not relevant to whether a party is entitled to a restocking fee. Rather than read CLIN 0005 as a restocking fee, consistent with the title, TSI instead treats the restocking fee as more akin to a cancellation fee or a quantity reduction penalty. However, if the parties had wanted to provide for a cancellation fee, they would have expressly provided for a cancellation fee. The parties could have labelled this provision as a "cancellation fee," if that was what the fee was intended to cover. An interpretation which requires finding that the restocking fee is unrelated to restocking is not in accordance with the plain language of this provision.

While TSI reads the title of the CLIN out of existence, it rewrites the first sentence of the definition of the CLIN to read as though it contained the very language expressly contained in the second sentence.  Although this sentence simply provides "[t]he initial ordered quantity either decreases or the order is cancelled," APPX0073, TSI reads this language to require compensation of a restocking fee based upon cancellation for the full reduction in ordered quantity upon such reduction.  In other words, by TSI's reading, the restocking fee "covers" the cost to a contractor when "[t]he initial ordered quantity either decreases or the order is cancelled."  Although this language indicates that the restocking fee can be activated when an initial ordered quantity either decreases or the order is cancelled, there is simply nothing in this sentence to suggest that it defines the quantity of units to which the restocking fee applies or that the restocking fee covers such costs.  What the restocking fee "covers" is found in the second sentence.

This second sentence provides that "[t]he fee covers the costs of restocking decreased or cancelled order to the Contractor."  APPX0073.  TSI's interpretation, however, effectively reads this sentence out of existence.  Its argument that restocking need not occur is irreconcilable with the requirement that "[t]he fee cover[] the costs of restocking."  If no restocking occurs, then there are no costs that need to be covered by the restocking fee.  The restocking fee does not "cover" the costs of a reduction or cancellation, it only covers "the costs of restocking."

In its brief, TSI contends that FEMA and the board's interpretation of the contract would transform the phrase "cover" into a requirement to "reimburse or compensate." Appellant's Br. at 24-25, 27; *see also* Appellant's Br. at 29-30, 32 (asserting that a restocking fee that allows for the recovery of actual costs would conflict with the termination for convenience clause). This is incorrect. In fact, we agree that a restocking fee is to be provided in lieu of actual costs incurred for restocking. Reimbursement is to be based upon the number of units that are restocked, rather than the actual cost of restocking. But that does not relieve TSI of the burden of demonstrating that it was required to restock, incurring restocking costs in the first instance. The existence of such costs, rather than the actual amount of such costs, is what is relevant. More simply, because the restocking fee "covers the costs of restocking decreased or cancelled order to the Contractor," a contractor must demonstrate that they incurred costs of restocking for a decreased or cancelled order to obtain the restocking fee. The words "costs of restocking" cannot be read out of the contract, even if the fee is provided in lieu of actual costs incurred.

Nor should this Court re-write the phrase "costs of restocking" to provide for the much broader "costs of cancellation." This contract is intended to assist FEMA in providing aid in times of natural disaster, such as hurricanes. Accordingly, initial estimates and orders will have to be varied as these situations evolve.

Changes in the volume of an order are to be expected. Thus, while as a matter of fairness, FEMA is willing to accept that it may have to pay the "costs of restocking" in the event of a cancellation or reduction in quantity, it is illogical to suggest that FEMA has chosen to impose a "cancellation penalty" on itself to ensure that initial estimates of supplies identified at the outset of a natural disaster are set in stone. Such an interpretation does not reflect the reality of providing aid during times of natural disasters.

Finally, TSI's assertion that the restocking fee does not contain the same "conditions on payment" as other clauses ignores the fact that there *are* express conditions for the payment of the fee, however minimal. Appellant's Br. at 24-25, 27. Simply, TSI must provide the agency with the quantity of bottles that it has restocked, thus demonstrating that it has incurred the cost of restocking. *See generally* APPX0046 (invoice instructions). This is not a particularly significant burden, but it is one that TSI could not, and thus declined, to attempt to meet. As such, the board did not err in denying TSI's challenge and TSI is not entitled to the additional payment that it has sought for bottled water that was not restocked.

## III.    The Court Should Not Consider The Proffered Extrinsic Evidence To Introduce Ambiguity Into The Otherwise Plain Language Of The Agreement

It is not appropriate to use extrinsic evidence to impart ambiguity into an otherwise unambiguous contract. *TEG-Paradigm Env't*, 465 F.3d at 1340. *See*

APPX0011-0012.  If the "'provisions are clear and unambiguous, they must be given their plain and ordinary meaning,' and the court may not resort to extrinsic evidence to interpret them." *McAbee Const.*, 97 F.3d at 1435 (quoting *Alaska Lumber & Pulp Co. v. Madigan*, 2 F.3d 389, 392 (Fed. Cir. 1993)) (additional citations omitted).  As this Court has observed, to permit otherwise "would cast 'a long shadow of uncertainty over all transactions' and contracts." *McAbee Const.*, 97 F.3d at 1435 (quoting *Trident Ctr. v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 564, 569 (9th Cir. 1988).

Much of TSI's arguments on appeal appear to rely upon the use of extrinsic evidence, which TSI sometimes characterizes as "context."  *See* Appellant's Br. at 33-46.  Indeed, TSI weaves such extrinsic evidence into its statement of the case, implying that to read the contract, this Court (and the board below) need consider such evidence.  *See, e.g.,* Appellant's Br. at 11 (Hurricane Florence task order), 14-17 (trade practice declarations).  However, because the contract was unambiguous, the board was entirely correct to not consider extrinsic evidence in the first instance.

However, even if the contract were ambiguous (and it is not), this evidence should not alter the Court's analysis.  First, to the extent that TSI seeks to rely upon its untimely declarations regarding trade practice, the board did not abuse its discretion in excluding consideration of these declarations.  APPX0009-0012.

Second, the interpretation of an otherwise ambiguous contract is a question a fact,

and the board's determination that "even if we were to find the contract ambiguous

and look to extrinsic evidence," APPX0016, it would not give weight to TSI's

allegation is supported by substantial evidence.  Accordingly, even were this Court

to determine that the contract is ambiguous, this Court should affirm the board's

decision.[2]

### A.   The Board Did Not Abuse Its Discretion In Declining To Reopen And Reconsider Its January 27, 2022 Decision And Excluding TSI's Late Proffered Declarations From The Record

"[A] discovery or evidentiary ruling of the [b]oard will not be overturned

unless 'an abuse of discretion is clear and is harmful.'" *Johnson Mgmt. Grp. CFC*,

308 F.3d at 1252 (Fed. Cir. 2002) (quoting *Curtin*, 846 F.2d at 1378) (reviewing a

ruling on a motion in limine for abuse of discretion).  Indeed, this court has applied

this standard to issues that might arise in connection with a request for

reconsideration.  *See Zoeller v. McHugh*, 626 F. App'x 983, 986 (Fed. Cir. 2015);

*see also Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir.

1990) (noting that the decision to grant reconsideration is largely within a

tribunal's discretion).

---

[2] Further, to the extent that the Court finds an error in the board's determination under the applicable standards, the appropriate action would be to remand to the board to make such factual findings in the first instance, rather than have this Court make its own findings of fact on appeal.

Here, the Board's rules provide that "[a] party may move for reconsideration of a decision or order on an appeal or petition within 30 days after that party receives the decision or order."  CBCA Rule 26(b).  TSI does not contend that it requested reconsideration within 30 days of the board's January 27, 2022 decision interpreting the plain language of the contract to require that it must provide "proof that the supplies were actually restocked and a fee was charged for that restocking."  APPX0006; *see* APPX0022 (docket demonstrating that no motion for reconsideration was filed).  The board's rules also provide that "[a]rguments and evidence previously presented are not grounds for reconsideration."  CBCA Rule 26(a).  TSI did not present evidence of trade practice in connection with its prior motion, but rather contended that the plain language of the contract controlled (without resorting to arguments based upon trade practice).  In light of TSI's failure to timely seek reconsideration or otherwise present its arguments and evidence the board did not abuse its discretion in excluding these declarations.

TSI attempts to excuse its inaction based upon the fact that the board permitted the parties to engage in discovery after its January 27, 2022 decision.  However, this is merely because there were other specific issues (not questions of contract interpretation) that the board had left open in its decision.  *See* APPX0006-0007.  For example, the board noted that the record was unclear "as to where in the shipping process the liter were when they were decreased, and how

24

the supplies were treated by the suppliers." APPX0006. The board also requested that the record be further developed to determine "to what extent TSI actually paid restocking fees and to whom they were paid." *Id.* None of these outstanding issues were issues of contract interpretation.[3]

Further, TSI's own contentions on appeal demonstrate that TSI's untimely attempt to supplement the record with purported expert declarations was inherently prejudicial to FEMA. Having not sought reconsideration, FEMA confined its discovery requests to the questions and issues that remained unsettled after the opinion. *See* APPX0435-0437. TSI did not. As TSI stresses in its brief, FEMA did not "submit its own expert reports, engage in any expert discovery, or otherwise introduce any evidence to counter the qualifications of TSI's three expert witnesses or their substantive opinions." Appellant's Br. at 16. TSI seeks to transform FEMA's compliance with the CBCA Rules and the agency's recognition that not only has the issue of contract interpretation had been settled upon the plain language, but the remaining issues related to the facts identified by the board into some sort of concession by the agency that the expert reports were appropriate. This is ridiculous. FEMA reasonably objected to this approach, *see* APPX0010,

---

[3] Indeed, FEMA had moved for summary judgment itself, contending that the record established that all restocking costs had been awarded by the contracting officer and TSI had not identified any additional costs outside what FEMA had determined ($14,592), but the board found a few open factual questions related to these issues. APPX0007.

rather than attempt to mirror TSI's tactics.  Accordingly, the board did not abuse its discretion in excluding these declarations, and this Court should consider them no further.

Even assuming for the sake of argument that excluding the untimely declarations from the record would constitute an abuse of discretion, TSI fails to demonstrate that the board was required to consider them in order to interpret the plain language of the contract.  The declarations generally relate to trade practice or the experiences of contractors on different contracts, and are offered to support TSI's interpretation of its contract, but the declarations do not provide specific evidence that TSI relied upon such trade practice.  Setting aside the obvious problem of the plain language of the contract (as detailed above), this Court has held that "a court should accept evidence of trade practice only where a party makes a showing that it relied reasonably on a competing interpretation of the words when it entered into the contract." *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 752 (Fed. Cir. 1999); *see also Jowett, Inc. v. United States*, 234 F.3d 1365, 1369 (Fed. Cir. 2000) ("affidavits describing a supposed common industry practice … are simply irrelevant where the language of the contract is unambiguous on its face.  It is well established that the government can vary from the norm in the trade when contracting for goods and services.").  TSI made no such showing before the board, but instead argued that *Metric Constructors*

26

requires the board to consider evidence of trade practice before determining whether there is an ambiguity. This is incorrect under a plain reading of *Metric Constructors* and has been explicitly rejected by this Court in numerous cases that have followed *Metric Constructors*.

For example, in *Jowett, Inc. v. United States*, 234 F.3d 1365 (Fed. Cir. 2000), the contractor argued that *Metric Constructors* stands for the proposition that "when the language of the contract does not reflect industry practice, the contract is ambiguous and consequently the evidence of industry practice is admissible to aid in the interpretation of the contract." TSI makes the same argument on appeal. Appellant's Br. at 35-42. As in *Jowett*, this reading of *Metric Constructors* should be rejected, because "[t]his view, in essence, enables industry practice to create an ambiguity, even before the language of the contract is itself analyzed to determine if an ambiguity lies within the four corners of the contract." *Id*. Such a finding would be contrary to existing law. *See, e.g. R.B. Wright Constr. Co. v. United States*, 919 F.2d 1569, 1572 (Fed. Cir. 1990) ("Neither a contractor's belief nor contrary customary practice, however, can make an unambiguous contract provision ambiguous, or justify a departure from its terms."); *Sterling Sav. v. United States*, 57 Fed. Cl. 445, 452 (2003) ("Plaintiff's attempts to get this Court to consider extrinsic evidence when the Assistance Agreements are clear on their face are contrary to law and must fail."); *Northwest Title Agency, Inc. v. United*

*States*, 855 F.3d 1344 (Fed. Cir. 2017) ("Trade practice and custom may not be used, however, to create an ambiguity where a contract was not reasonably susceptible of differing interpretations at the time of contract." (internal citations omitted)).[4]

Accordingly, even if the board abused its discretion in excluding TSI's untimely declarations, they would not have altered the board's analysis.

## B.   The Hurricane Florence Task Order Does Not Support TSI's Claims

TSI also sought to introduce information about a separate task order (the Hurricane Florence task order) as extrinsic evidence to support its position. Appellant's Br. at 42-46. Again, however, where a contract provision is clear and unambiguous, the court may *not* resort to extrinsic evidence to interpret it. *McAbee*, 97 F.3d at 1435. Cir. 1993). Simply, the Court's inquiry ends and the plain language of the contract controls. *Coast Fed. Bank, FSB v. United States*, 323 F.3d at 1040–41.

Further, the contracting officer's actions in connection with the September 2021 Hurricane Florence task order does not support TSI's position. The fact that a contracting officer on one task order did not request documentation for proof that

---

[4] While not binding on this Court, TSI's reading of *Metric Constructors* has also explicitly rejected by the United States Court of Federal Claims in cases such as *Two Shields v. United States*, 119 Fed. Cl. 762 (2015), *aff'd sub nom. Ramona Two Shields v. United States*, 820 F.3d 1324 (Fed. Cir. 2016).

under a million liters of bottled water were restocked does not mean that a contracting officer on another task order must convert the restocking fee into a cancellation fee in direct contradiction of the actual language in the contract, nor does such evidence aid in the interpretation of the language of the contract absent some indication that that contracting officer's actions was based upon a specific interpretation of the contract. Given these differences, as described in more detail below, the board's determination that it lacked "reliable evidence, such as where the order was in the delivery process, by which to evaluate whether the circumstances of the task orders were similar," APPX0016, is supported by substantial evidence.

As relevant here, FEMA reduced the ordered quantity under the Hurricane Florence Task Order by 975,680 liters and paid the $0.41 restocking fee rate for the full quantity of the order reduction without requesting proof that TSI restocked those 975,680 liters of water. *See* APPX0262. TSI contends that this means that FEMA must have agreed with its interpretation that restocking is not required and that the restocking fee is more akin to a cancellation fee. Appellant's Br. at 42-46.

However, TSI never alleged that it did not restock those 975,680 liters of water. The contracting officer might have assumed as such, but such an assumption does not evidence a specific, differing interpretation of restocking fee

provision. *Compare Chase & Rice, Inc. v. United States*, 354 F.2d 318, 322 (Ct. Cl. 1965) (specific statement interpreting the contract terms).

Instead of FEMA agreeing with the position that the restocking fee should apply to the quantity of the decrease in order rather than the quantity of liters restocked, this appears to present an instance where those two numbers happened to be the same. Indeed, FEMA specifically paid the restocking fee on the Hurricane Florence task order "for unshipped water" based on the "last day delivery." APPX0242. At best, all that TSI can demonstrate with this example is that the contracting officer did not require proof of restocking when the quantity of decrease was limited to a single day of unshipped water. There is nothing unreasonable about assuming that 975,680 liters of water, representing a single day of shipment, was restocked under the Hurricane Florence Task Order, while requesting documentation as to whether the same was true of an amount almost 7,000% higher (submitted almost three years after the fact) under the instant task order.

Nor are the cases cited by TSI on point. Appellant's Br. at 42-46. In *WDC West Carthage Associates v. United States*, for example, this Court referenced the conduct of the parties during performance as evidence of the *otherwise unambiguous* meaning of the contract. 324 F.3d at 1363-64 (Fed. Cir. 2003). Specific actions taken in accordance with the express terms of the contract lent

weight to the plain meaning of the contract, especially where a later, plainly different interpretation was unsupported by any contract language. *Id.* That is not the case here. *Reliable Contracting Group, LLC v. Department of Veterans Affairs*, 779 F.3d 1329, 1332 (Fed. Cir. 2015) is similarly not on point, as it concerns conflicting interpretations by the agency at different times as applied to the same item at issue (generators), rather than two different and district factually distinct situations.

Accordingly, even if the board were required to consider this evidence, it would not change the result.

## IV.    The Doctrine Of *Contra Proferentem* Is Not Applicable Here

TSI briefly contends that if there is an ambiguity in the terms of the restocking fee, TSI's interpretation of the restocking fee provision should prevail under the doctrine of *contra proferentem*. Appellant's Br. at 49-50. However, this Court has made clear that the doctrine of *contra proferentem* is a "rule of last resort," which is "applied only when other approaches to contract interpretation have failed" and, "after examining the entire contract, the relation of the parties and the circumstances under which they executed the contract, the ambiguity remains unresolved." *Gardiner, Kamya & Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1352 (Fed. Cir. 2006) ("Ascertaining the most reasonable construction of

contract language utilizing other tools of contract interpretation must be the first priority").

In addition to being a rule of last resort, the doctrine of *contra proferentem* also has a number of limitations or exceptions, including the patent ambiguity doctrine. *See Triax Pac., Inc. v. West*, 130 F.3d 1469, 1474 (Fed. Cir. 1997). "The existence of a patent ambiguity in a government contract raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation." *Id.* (internal quotation marks omitted). "That duty requires the contractor to inquire of the contracting officer as to the true meaning of the contract before submitting a bid." *Id.* at 1474-75. "Absent such inquiry, a patent ambiguity in the contract will be resolved against the contractor." *Id.* at 1475.

Moreover, "apart from the patent ambiguity exception," for *contra proferentem* to apply, the contractor must establish each of the following elements: "(1) that the contract specifications were drawn by the Government; (2) that language was used therein which is susceptible of more than one interpretation; (3) that the intention of the parties does not otherwise appear; and (4) that the contractor *actually and reasonably construed the specifications* in accordance with one of the meanings of which the language was susceptible." *HPI/GSA 3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004); *see also Edward R. Marden Corp.*, 803 F.2d at 705 ("It is also well settled that where a contractor seeks recovery

based on his interpretation of an ambiguous contract, he must show that he relied on this interpretation in submitting his bid.").

As an initial matter, because the contract is unambiguous, this doctrine does not apply.  Further, even if the *contra proferentem* rule-of-last-resort were reached, TSI still could not recover because it failed to prove that it had relied on its current interpretation of the contract when submitting its proposal.  *See Edward R. Marden Corp.*, 803 F.2d at 705 ("It is also well settled that where a contractor seeks recovery based on his interpretation of an ambiguous contract, he must show that he relied on this interpretation in submitting his bid."); *Fruin-Colnon Corp. v. United States*, 912 F.2d 1426, 1430 (Fed. Cir. 1990) ("The burden of proving reliance on the claimed interpretation . . . falls on the contractor.").  The record is devoid of contemporaneous evidence that TSI relied upon its interpretation of the restocking fee provision to require payment of a restocking fee without incurring the costs of restocking.

## V.    TSI Fails To Demonstrate That The Board's Determination That It Suffered No Damages Is Unsupported By Substantial Evidence.

Finally, TSI contends that the board erred in discussing the question of whether TSI could qualify for an equitable adjustment, *see* APPX0016, because TSI has not asserted a claim for an equitable adjustment, but is raising a claim for a breach of contract.  *See* Appellant's Br. at 51.  As an initial matter, although TSI refers to its claim as a "breach of contract" claim, the contract at issue incorporated

FAR 52.212-4(d), APPX0031, and thus TSI's claim is more accurately viewed as a "dispute" arising under the contract and governed by FAR 52.233-1 (Disputes), rather than a breach.

TSI does not demonstrate how the relevant factual portion of the board's determination (that TSI suffered no damages) is unsupported by substantial evidence, but instead merely claims that its "harm is readily apparent," by virtue of cancellation. Appellant's Br. at 52. In other words, TSI's argument that it suffered damages is wholly contingent upon this Court determining that the TSI's interpretation of the contract is correct and that the appropriate measure of damages is tied to the entire reduction in quantity. We do not dispute that a different interpretation of the contract would yield a different result. If TSI's interpretation is incorrect, however, there is no independent merit to TSI's suggestion that the board incorrectly determined that TSI failed to demonstrate that it had incurred any restocking costs, having admitted that it has not paid any restocking fees. APPX0014; *see* APPX0435.

In any event, because this ruling is in the alternative, APPX0016, and TSI acknowledges that it did not claim and is thus not entitled to any equitable adjustment, this Court need not consider the matter any further.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court affirm the board's decision.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

  /s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

  /s/ Steven Michael Mager
STEVEN MICHAEL MAGER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 616-2377

August 28, 2023                    Attorneys for Appellee

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  23-1556

**Short Case Caption:**  Team Systems International, LLC v. Secretary of the Department of Homeland Security

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  7960  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/28/2023

Signature:  /s/ Steven Michael Mager

Name:  Steven Michael Mager

Save for Filing